HENRIETTA M. WILCOX, APPELLANT, *v.* ONONDAGA COUNTY SAVINGS BANK, RESPONDENT.

*Deposit in a savings bank — what acts of the depositor are a ratification of the act of one who has drawn out the money as her agent — effect of a by-law protecting the bank in paying the checks of persons producing the pass-book.*

This action was brought by the plaintiff, as the assignee of one Olive A. Wilcox, to recover moneys deposited with the defendant, a savings bank, to the credit of " Olive A. Wilcox, David J. Wilcox, agent."    The defendant in its answer alleged that a pass-book was issued at the time the deposit was made, and that from time to time upon the presentation of the pass-book and the written receipt, order, check or other written request of said Olive A. Wilcox, personally, or of said Olive A. Wilcox by David J. Wilcox, agent, accompanying the same, the whole amount of said deposits was paid out by the bank, and that in making such payments it exercised due care and diligence in the effort

to ascertain as to the genuineness of the written checks or order. It also alleged that during the whole existence of the said account David J. Wilcox was the husband and agent in fact of Olive, and as such duly authorized and empowered to draw and receive all sums so paid on said account. Upon the trial before a referee the defendant was allowed to amend its answer by setting up a general denial.

*Held*, that it was proper for the referee to allow this amendment to be made.

The referee found that the moneys had been deposited and drawn out by David Wilcox, as the agent of Olive; that the pass-book had been twice written up and the balances entered and carried forward; that prior and subsequent to the time of the entry of these balances the book was in the possession of the said Olive and also of the said David; that on or about April 17, 1880, the balance was drawn out by David, redeposited to his own account and subsequently drawn therefrom by him; that a portion at least of the money so drawn out was applied and used in Olive's business.

*Held*, that those facts showed a ratification by Olive of the authority of David to draw, and of the bank to pay the money.

That as the facts in this case authorized a finding that the defendant had not been guilty of negligence in making the payments, the bank was also protected from the claim of Olive by a regulation contained in its by-laws providing that " the treasurer will endeavor to prevent frauds, and all payments made to persons producing the pass-book shall be valid payments and shall discharge the bank from any further liability."

APPEAL from a judgment, entered in Oswego county, upon the report of a referee dismissing the plaintiff's complaint, with costs.

The action was brought upon certain demands alleged to have been assigned to the plaintiff by Olive A. Wilcox.

The complaint alleges that " during the years 1878, 1879, 1880 and 1881, Olive A. Wilcox deposited in the defendant's bank and with the defendant, and it collected and received for her $4,000 in money."

The original answer, among other things, alleged that at the opening of an account with the defendant a pass-book was issued to the depositor, wherein was entered the credits, and it was alleged that an agreement was made at the time an account was opened to the effect " that said defendant might and should, from time to time, pay to any person presenting the pass-book the whole or any part of any sum remaining to the credit of said account, as the same might be demanded in accordance with the rules and regulations of said bank for the conduct of its business, which said rules and regulations were well known and assented to by said depositor, * * * and from time to time upon the presentation

of said pass-book and the written receipt, order, check or other written request of said Olive A. Wilcox personally, or of said Olive A. Wilcox by David J. Wilcox, agent, accompanying the same, the whole amount of said deposits was paid out by said bank, and defendant avers that upon each and every one of the several occasions of such payment, it exercised due care and diligence in the effort to ascertain as to the genuineness of the written checks, order or receipt."

The said original answer also alleged "that during the whole existence of said account, and until the same was wholly paid and settled, said David J. Wilcox was the husband and the agent in fact of said Olive A. Wilcox, and as such was duly authorized and empowered to draw and receive all sums paid upon said account on his request."

The answer also alleged that the defendant had paid all of the deposits.

The referee found among other facts the following, viz.: "That David J. Wilcox up to and including April 17, 1880, was her agent and authorized, on presentation of the pass-book, to draw out the money deposited to her credit; that on the 15th day of October, 1878, Olive A. Wilcox, by David J. Wilcox, deposited with the defendant two thousand dollars, and took a pass-book in which the money was credited 'Olive A. Wilcox, David J. Wilcox, agent;' that subsequent deposits 'were made in the same way and credited on the same book, mostly by David J. Wilcox;' that the money was mostly drawn on orders made by D. J. Wilcox as agent, and paid on presentation of the book and entered thereon; that the book was written up August 30, 1879, and a balance carried forward of $1,067.41; that the book was again written up in January, 1880, and the balance stated, entered and carried forward at $671.74; that both prior and subsequent to the entry of this balance the book was in the possession of said Olive A. Wilcox; that the book was also in the possession of David J. Wilcox, both prior and subsequent to these entries; that on or about the 6th of April, 1880, the book was written up and the balance of $536.36 carried forward; that on or about the 17th of April, 1880, there is a credit to the amount of $3.84 for interest and on that day David J. Wilcox, as agent, drew out the whole balance ($560.20) and the account was closed and the

book surrendered; that on the same day, April seventeenth, the same sum of $560.20 was credited to David J. Wilcox, personally; that such amount remained to the credit of David J. Wilcox until after the 23d of April, 1881, and was thereafter drawn out by him and paid to him by defendant." He also found " that the entries in the book and the fact that the book was twice written up and balance struck without any objection on the part of Olive A. Wilcox as to the payment in fact or as to the form of the checks and orders, was a ratification in fact of the authority of David J. Wilcox to draw out the money and of the payment to him by the bank" and " that a portion of the money, at least, drawn by David J. Wilcox, was applied and used in Olive A. Wilcox's business."

*George W. Bradner*, for the appellant.

*C. L. Stone*, for the respondent.

HARDIN, P. J.:

On the second day of the hearing before the referee the defendant " asked to amend his answer by setting up a general denial." Case was then adjourned, and the defendant moved to have this amended answer allowed, or be allowed to serve it. Thereupon the plaintiff objected on the ground that it set up a new defense and that the referee had no power to allow it, and further, that the amendment would change the position of parties. Thereupon the referee allowed the amendment, and the plaintiff took an exception.

In considering this exception it must be borne in mind that the original answer to the complaint, which demanded an accounting, contained averments to the effect that the defendant had paid up all the moneys it had received from Olive A. Wilcox, or David J. Wilcox as her agent, or otherwise, when she made the complaint. Such averments were repeated in the amended answer, and it also contained denials of any indebtedness on the part of the defendant.

Section 1018 of the Code of Civil Procedure, provides, viz.: " Upon the trial of an issue of fact the referee exercises also the same power as the court to allow amendments to the summons or to the pleadings." The effect of this provision is to give to the referee before whom an issue of fact is being tried the same power as the court possesses in respect to amendments.

The section from which we have quoted confers the power upon a referee to allow an amendment, such as was allowed in this case. (*Knapp* v. *Fowler*, 26 Hun, 200.) We are of the opinion that the referee did not exceed his power or abuse his discretion in the premises, and that there is no force in the exception taken to his ruling. (*Knapp* v. *Fowler*, *supra*; *Peyser* v. *Wendt*, 87 N. Y., 322.)

The case of *Bockes* v. *Lansing* (74 N. Y., 437), referred to by the appellant's counsel is unlike the one before us. That was a case where the court held that the referee had no power to change a cause of action from "one for equitable relief to one in ejectment." If such an amendment had been made the cause would have been triable by a jury and not by a referee.

In *Conway* v. *Mayor* (8 Daly, 306) it was held that the court upon the trial has power to amend the complaint by striking out an admission contained therein.

In *Howard* v. *Johnson* (82 N. Y., 271) the defendant was allowed to amend his answer on the trial by setting up an overpayment to the plaintiff on the contract in suit, and demanding judgment for the amount of the same.

*Joslyn* v. *Joslyn* (9 Hun, 388), cited by the appellant's counsel, is inapplicable to the question now before us. It is a case which arose and was decided under section 173 of the old Code, and it was there held that the referee did not possess the power to allow a complaint to be amended upon the trial so as "to convert the action for use and occupation" by one tenant in common "into the action for an account for money had and received authorized by the Revised Statutes."

It is claimed by the appellant that the referee erred in allowing Dawson, the treasurer of the defendant, who was called as a witness, to produce the bank ledger and state what the account contained therein respecting the transactions referred to in the pleadings in this case. We think the evidence was entirely competent as bearing upon the question of the manner in which the accounts were kept, and for the purpose of ascertaining the several items thereof and the dates when moneys had been received and disbursed by the defendant.

The real question between the parties was not as to the amount of money received by the defendant or the amount of money dis-

bursed by it. It was whether the disbursement by the defendant was binding upon plaintiff's assignor. The case is, therefore, different from *Ocean National Bank* v. *Carll* (55 N. Y., 440). In *White* v. *Ambler* (8 N. Y., 170) the books of the bank were relied upon as evidence that the account of the defendant was overdrawn. That case differs from the one before us.

We are of the opinion that there was evidence warranting the referee in finding that David J. Wilcox was the agent of his wife Olive, and that she allowed the bank to act in the faith that he was her agent, and that she ratified numerous acts performed by him in the course of such agency, and that she and her assignee were concluded from disputing his authority to receive the moneys from the bank. His wife received and used some of the moneys that came from the bank through his hands. She had possession of the passbook after it contained numerous entries of moneys drawn by him as her agent and entered in the pass-book.

We think, therefore, the referee was warranted in concluding upon the evidence that there was an authority on the part of David J. Wilcox to withdraw the moneys from the defendant as the agent of his wife. Besides, when the plaintiff's assignor received the passbook among the by-laws printed therein was the following, viz. : "The treasurer will endeavor to prevent frauds, and all payments made to persons producing the pass-book shall be valid payments and shall discharge the bank from any further liabilities. No depositor shall be entitled to withdraw any principal or interest without producing the original pass-book and having the amount entered therein." This by-law became a part of the contract between the depositor and the bank, and the depositor was chargeable with notice thereof. Whether or not the defendant had been guilty of negligence in the premises, whether or not it had used "endeavor to prevent frauds" to the extent required in the by-law from which we have quoted, were questions of fact for the referee upon all the evidence bearing upon these questions. His finding is favorable to the defendant. Such questions were eminently questions of fact for the judgment of the referee upon a careful consideration of all the circumstances and testimony disclosed. His finding seems to be in accordance with the weight of evidence upon that subject. We ought, therefore, to accept it.

It comes, therefore, to this: that the defendant paid the moneys, having used this endeavor to prevent frauds, and having been guilty of no negligence in the premises. (*Allen* v. *Williamsburgh Savings Bank*, 69 N. Y., 314.) In that case the payment was not upheld under the by-law, for the reason that there were some circumstances which the court thought were such as would "necessarily excite suspicion and inquiry," and in that case the jury found, under the conditions of the by-law, that the defendant had not discharged its full duty, and, therefore, the by-law did not stand as a protection to the bank. Near the close of Judge FOLGER's opinion in that case, he states the doctrines which we deem eminently applicable to the case now in hand, and says, viz.: "We hold that, in the absence of any rules assented to by its customers, a savings bank is to be governed by the same legal principles which apply to other moneyed institutions. When it has prescribed rules, and its depositor has assented to them, they are the agreement, and each party must keep it to preserve rights against the other. The extent of the duty which the savings bank is under will in some degree be measured by the strictness or extent of the rules it has put upon itself. Ordinarily, it is bound to the exercise of reasonable care and diligence, which will be a question of law or of fact, as the proofs are conclusive and undisputed or debatable and conflicting." The latter case was approved, and the doctrine which we have quoted therefrom restated in *Boone* v. *The Citizens' Savings Bank* (84 N. Y., 83).

In chapter 371 of the Laws of 1875, providing for the organization of savings banks and the administration of their affairs, authority is given to the board of trustees to prescribe such regulations in respect to the repayment of deposits as the board of trustees shall deem advisable, and for the printing of the same in "pass-books or other evidence of deposit furnished by the corporation," and it is therein provided that such regulations "shall be evidence between the corporation and the depositors holding the same of the terms upon which the deposits therein acknowledged are made."

In *The People* v. *The Third Avenue Savings Bank* (98 N. Y., 663) it was again held that where a payment has been made by a savings bank, with due care and diligence, to the one presenting the deposit book, such payment being made in pursuance of the by-laws

and regulations under which the deposit was received, that it was effectual, citing with approbation *Appleby* v. *Erie County Savings Bank* (62 N. Y., 12) and *Allen* v. *Williamsburg Savings Bank* (69 id., 314).

We are of the opinion that the referee disposed of the issues properly, and that the exceptions to his rulings in respect to the admission and rejection of evidence, present no prejudicial errors. (See Code of Civ. Pro., § 1003.)

The judgment should be affirmed, with costs.

BOARDMAN, J. :

The pass-book on which the moneys were credited having been issued to " Olive A. Wilcox, David J. Wilcox, agent," to the knowledge of Olive it was a recognition of David J. Wilcox's authority to draw the funds from the bank as agent, and such authority would continue until the form of the account was changed or the bank was notified that his agency was ended, or that his checks as agent should not be honored. I concur in the affirmance of the judgment.

FOLLETT, J., concurred.

Judgment affirmed, with costs.